Mrs. Anne Gough Program Administrator Colorado State Board of Nursing 1525 Sherman Street Denver, Colorado 80203
Dear Mrs. Gough:
This letter is written to update my letter to you of June 4, 1980, construing a portion of the Nurse Practice Act. That letter, a copy of which is attached, responded to an inquiry by you on behalf of the State Board of Nursing, about professional nurses teaching and supervising nonlicensed personnel to perform intradermal skin tests.
As you know, since my opinion of June 4, 1980 was written, a new version of the Nurse Practice Act, C.R.S. 1973, 12-38-101 etseq., as amended, has become effective (as of July 1, 1980). This letter is being written to inform you of my opinion under the newly enacted Nurse Practice Act concerning the issues discussed in my previous letter.
QUESTIONS PRESENTED AND CONCLUSIONS
Specifically, the questions raised in your initial inquiry and addressed in my letter of June 4, 1980 are as follows:
1. May R.N.'s teach persons not licensed in health-related fields to administer or perform intradermal skin testing for tuberculosis?
2. May R.N.'s supervise nonlicensed personnel who perform such tests?
 After reviewing the new Nurse Practice Act, my opinion concerning these issues remains the same. That is, it is my conclusion that R.N.'s may lecture and provide demonstrations to nonlicensed individuals concerning intradermal skin testing. However, R.N.'s may not supervise any clinical practice on patients or actual performance by such unlicensed persons of such tests.
ANALYSIS
You asked initially whether R.N.'s may teach persons not licensed in health-related fields to administer or perform intradermal testing for tuberculosis.
As you know, my June 4, 1980 opinion initially involved an analysis of the definition of professional nursing. Although the new act alters that definition in certain particulars, the changes do not alter my conclusion with regard to the particular questions raised here.
The new Nurse Practice Act, C.R.S. 1973, 12-38-103(10), as amended, defines the practice of professional nursing as follows:
 (10) "Practice of professional nursing" means the performance of both independent nursing functions and delegated medical and dental functions, including the initiation and performance of nursing care through prevention, diagnosis, and treatment of human disease, ailment, pain, injury, deformity, or physical or mental condition which requires such specialized knowledge, judgment, and skill involving the application of principles of biological, physical, social, and behavioral sciences as are required for licensing as a professional nurse pursuant to section 12-38-111. "Practice of professional nursing" shall include the performance of such services as:
 (a) Evaluating health status through the collection and assessment of health data;
(b) Health teaching and health counseling;
 (c) Providing therapy and treatment that is supportive and restorative to life and well-being either directly to the patient or indirectly through consultation with or through the supervision and teaching of others;
 (d) Executing delegated medical functions as prescribed or authorized by a licensed or legally authorized physician or dentist;
 (e) Referring to medical or community agencies those patients who need further evaluation or treatment;
(f) Reviewing and monitoring therapy and treatment plans.
(Emphasis supplied.)
The above definition authorizes R.N.'s to teach other individuals matters related to patient therapy and treatment and to supervise such individuals. However, for each of the reasons stated in my June 4, 1980 opinion, when such teaching is directed at nonlicensed individuals and involves procedures which require a health-related license to perform, that teaching must be limited to lectures and demonstrations performed by the R.N. in question. Such teaching may not include oversight by the R.N. of clinical "practice" of the procedures involved on actual patients by the nonlicensed individuals who are being trained. This is because a nonlicensed individual performing procedures for which a health-related license is required is acting in violation of health-related licensing statutes.[1] An R.N. allowing nonlicensed individuals to "practice" such procedures on actual patients would be aiding such violation, again in violation of the licensing statutes.[2]
As I stated in my previous opinion, with regard to the specific question posed, it is my understanding that intradermal skin testing for tuberculosis involves piercing the skin with a needle and inserting the needle between layers of skin. Such a procedure may not be performed in this state by a person who does not possess a health-related license [3] and nothing in the definition of the practice of professional nursing under the new or old Nurse Practice Act alters that requirement. The only exception to this rule is a nonlicensed individual who is acting under the personal and responsible direction and supervision of the physician licensed to practice in Colorado and who, therefore, falls within the exemption from licensure defined in C.R.S. 1973, 12-36-106(3)(l) of the Medical Practice Act.[4] As noted in the attached attorney general opinion of October 11, 1977, the exemption is operative only when the supervision and direction is rendered personally by a physician and not through other individuals, such as an R.N. Therefore, a nonlicensed person performing intradermal skin testing under the supervision of an R.N. would not be acting in compliance with the C.R.S. 1973, 12-36-106(3)(l) exemption to the Medical Practice Act, but, instead, would be acting in violation of the licensing statutes.
Thus, under the circumstances indicated in your inquiry, an R.N. may lecture and provide demonstrations to nonlicensed individuals concerning intradermal skin testing procedures for tuberculosis. However, an R.N. may not supervise any clinical "practice" in a teaching setting of the techniques involved by the nonlicensed individuals. As indicated above, an R.N. who supervises such an individual engaging in clinical "practice" of such techniques would be aiding in a violation of the health care licensing statutes.
It should be noted that R.N.'s who teach nursing and health-related matters to nonlicensed individuals in accordance with this opinion are still under an obligation to do so consistent with all statutory requirements, including the requirements under C.R.S. 1973, 12-38-117(1)(c) and (f) that they not act negligently or willfully in a manner inconsistent with the health or safety of persons under their care; or negligently or willfully practice nursing in a manner which fails to meet generally accepted standards for such nursing practice.
You have also asked whether R.N.'s may supervise nonlicensed personnel who perform intradermal skin tests for tuberculosis in other than a teaching setting. For exactly the same reasons expressed above, it is clear that an R.N. may not supervise nonlicensed personnel who perform such tests in a nonteaching setting.[5]
As a final matter, it should be noted that this opinion is not intended to apply to the teaching or supervision of nursing students enrolled in an educational program approved by the board when such practice is performed as part of an educational program prior to graduation. Such practice is exempt from the licensing provisions of the Nurse Practice Act, C.R.S. 1973, 12-38-125(1)(f), as amended.
SUMMARY
To briefly summarize my opinion, R.N.'s (and L.P.N.'s) may lecture and provide demonstrations to nonlicensed individuals concerning intradermal skin testing but may not supervise clinical practice on patients or actual performance by nonlicensed persons of such tests.
Very truly yours
 J.D. MacFARLANE Attorney General
NURSES, PRACTICAL NURSES, REGISTERED MEDICAL PRACTITIONERS, LIMITED
C.R.S. 1973, 12-38-101 et seq.
REGULATORY AGENCIES, DEPT. Nursing, Bd. of
Under Nurse Practice Act effective 1/1/80, registered nurses and licensed practical nurses may lecture and provide demonstrations to nonlicensed individuals concerning intradermal skin testing (and other procedures for which some health-related license is required), but may not supervise clinical practice on patients or actual performance by nonlicensed persons of such tests (or procedures).
[1] As an example, the statutes governing nurses and physicians are mandatory in nature. That is, unless exempted, an individual may not perform acts covered by the statutes without being properly licensed. See C.R.S. 1973, 12-36-106(2) and 12-38-123, as amended.
[2] See, e.g., C.R.S. 1973, 12-38-117(1)(e).
[3] See C.R.S. 1973, 12-36-106, 12-38-103(9), and12-38-103(10), defining the practice of medicine, practical nursing and professional nursing, respectively.
[4] That exemption reads as follows:
 (3) Nothing in this section shall be construed to prohibit, or to require a license under this article with respect to any of the following acts:
 (l) The rendering of services under the personal and responsible direction and supervision of a person licensed under the laws of this state to practice medicine, but nothing in this exemption shall be deemed to extend the scope of any license, and this exemption shall not apply to persons otherwise qualified to practice medicine but not licensed to so practice in this state;
An interpretation of this provision is contained in the attorney general's opinion issued by this office on October 11, 1977, a copy of which is attached hereto.
[5] It should be noted that the reasoning of this opinion would apply with equal strength to licensed practical nurses teaching or supervising such nonlicensed personnel performing intradermal skin testing for tuberculosis.